**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VERONICA GOLLER,** | ) | **CASE NO.1:05CV2256** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **OHIO DEPT. OF REHABILITATION** | ) | **OPINION AND ORDER** |
| **& CORRECTIONS, NORTHEAST** | ) | |
| **PRE-RELEASE CENTER, ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Ohio Department of Rehabilitation & Corrections, Northeast Pre-Release Center's ("NEPRC") Motion for Summary Judgment (ECF Dkt# 19). For the following reasons, the Court grants Defendant's Motion. The Court further finds no claims were specifically alleged against the Ohio Attorney General's office since it was sued in its representative capacity, and, there being no legal distinction between the Ohio Department of Rehabilitation & Corrections and NEPRC, the summary judgment disposes of all claims against all parties.

Plaintiff's Complaint alleges that shortly after her employment commenced, Captain Smith, one of Plaintiff's supervisors, began a sustained campaign of harassment and discrimination based on Plaintiff's race, gender and sex, eventually resulting in Plaintiff's

1

termination. Plaintiff's Complaint alleges discrimination based on race, gender and sex in violation of Title VII and Ohio Revised Code §4112.02 and §4112.99, retaliation in violation of Title VII and Ohio Revised Code §4112.02 and §4112.99, and hostile work environment. Plaintiff seeks compensatory, statutory and punitive damages.

## **FACTS**

Plaintiff Veronica Goller is a Caucasian female, formerly employed by Defendant NEPRC as a corrections officer from December 28, 2003, until her termination on September 1, 2004. Ms. Goller was a probationary employee for the duration of her employment with NEPRC. Plaintiff was assigned to work under Captain Smith and Lieutenant Katrina Farnan (aka Fisher) a Caucasian female. From the time Plaintiff was under the supervision of Smith and Farnan, Plaintiff claims they made her life miserable. Smith and Farnan made frequent derogatory comments about Plaintiff's race, gender, sex and physical appearance, evidencing discriminatory intent. Smith referred to Plaintiff as "white cupcake", "little white princess", "C.O. white Barbie", "white girl born with a silver spoon in her mouth," and "Ms. Thing." Plaintiff also alleges Captain Smith frequently made comments about her uniform fitting too tight and repeatedly accused Plaintiff of trying to sleep her way to promotion. Plaintiff alleges such comments created a hostile work environment in violation of Title VII and Ohio law, causing her severe emotional and mental distress. Plaintiff alleges Defendants treated her differently than similarly-situated employees due to her race, sex, and gender. Finally, Plaintiff claims she reported the harassing and racially discriminatory remarks and false write-ups to Warden Frank Shewalter, the ultimate decision maker. On September 1, 2004, she was terminated.

Defendant contends Plaintiff's harassment claims fail because Smith's treatment of Plaintiff was not based on Plaintiff's race or gender and such treatment did not constitute an objectively hostile work environment under Title VII. Defendant states Plaintiff cannot make a prima facie case of retaliation or racial discrimination as she cannot demonstrate she was treated differently than similarly-situated males or minority employees. She cannot demonstrate the ultimate decision maker was that unusual employer who discriminates against Caucasian employees, nor can she demonstrate a causal connection between her complaints and termination other than their temporal proximity. Finally, Defendant claims she cannot demonstrate her termination for poor performance was pretextual.

The Court notes that Plaintiff has abandoned her claims of discrimination based on sex/gender under federal and state law. Also, Plaintiff has abandoned her state law claims, as her Brief in Opposition to Defendant's Motion for Summary Judgment failed to defend or even mention her state law claims.

## **STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, this Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hospital Ass'n.,* 78 F.3d 1079, 1087 (6th Circ. 1996). "Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-250 (1986).

### **Discrimination based on Race**

Title VII of the United States Code makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42

4

U.S.C. 2000e-2(a)(1). Title VII claims are analyzed similarly to claims brought under Ohio Revised Code section 4112. *See Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1020 (6th Cir. 2000).

"A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by providing circumstantial evidence which creates an inference of discrimination." *DiCarlo v. Potter,* 358 F.3d 408, 414 (6th Cir. 2004). "Mere personal belief, conjecture and speculation are insufficient to support an inference of...discrimination." *Woythal v. Tex-Tenn Corp.,* 112 F.3d 243, 247 (6th Cir. 1997).

Direct evidence is evidence "which, if believed, proves the existence of improper discrimination animus without inference or presumption." *Williams v. United Dairy Farmers,* 20 F. Supp.2d 1193, 1198 (S. D.Ohio 1998). In *Talley v. Bravo Pitino Rest.,* 61 F.3d 1241, 1248-49, (6th Cir. 1995), the Sixth Circuit provided examples of direct evidence of racial animus. These included racial slurs by a manager, a principal stating a "white presence" needed to be maintained in a recently integrated school to prevent white flight, and employee testimony that managers made derogatory racial remarks about blacks. Discriminatory remarks by a manager may be evidence of discrimination even if the manager was not the ultimate decision maker. *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344, 354-55 (6th Cir. 1998). However, in *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 380 (6th Cir. 1993), the Sixth Circuit stated "[c]ase precedent clearly reflects that isolated and ambiguous statements ⋯ are too abstract, in addition to being irrelevant and prejudicial" to support a discrimination claim. "Direct evidence generally requires unmistakable verbal assertions that the plaintiff was treated adversely because of his race." *Paasewe v. Ohio Arts Council*, 74 Fed.Appx. 505, 507 (6th Cir. 2003) citing *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir.1998).

The Court finds the comments allegedly made by Smith to Goller are not direct evidence of discrimination, because they require a fact finder to infer discriminatory intent. Simply referring to someone as "white barbie", "little white princess" or "white cupcake" do not, in and of themselves, constitute a slur or prove improper discriminatory animus without some degree of inference or context. See *Betts v. Costco Wholesale Corp.,* 2005 WL 2562962 (E.D. Mich. 2005) (Supervisor's statements concerning African-American employees, including "I wouldn't hire nobody that black and ugly" and referring to African-American employee as "a black widow spider", were not direct evidence of discrimination.)

### **McDonnell Douglas/Burdine Analysis**

In the absence of direct evidence of discrimination, the Court will apply the *McDonnell Douglas/Burdine* burden shifting analysis. It is plaintiff's burden to prove a prima facie case of discrimination by his or her employer. *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, (1973). *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53, (1981). Upon plaintiff making a prima facie showing of discrimination, the burden "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id.* at 253, (quoting *McDonnell,* 411 U.S. at 802). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

"To establish a prima facie case of discrimination based upon circumstantial evidence, Plaintiff must show that he (1) "is a member of a protected group," (2) "was subject to an

adverse employment decision," (3) "was qualified for the position, and (4) "was replaced by a person outside of the protected class." *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 349 (6th Cir.1997).  In addition, under section (4) Plaintiff may meet her burden by showing she was treated differently than similarly situated non-protected employees.  See *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 461 (6th Cir. 2001). "In adapting the *McDonnell Douglas* test to cases of reverse discrimination, this Circuit has held that, under the first prong, a plaintiff must demonstrate 'background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" <u>Vitt v. City of Cincinnati,</u> 97 Fed. Appx. 634, 639 (6th Cir. 2004) quoting *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985),  *see also Zambetti v. Cuyahoga Community College,* 314 F.3d 249, 256 (6th Cir.2002) (the evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely"). "To satisfy the fourth prong, a plaintiff must show that the defendant treated differently employees who were similarly-situated but were not members of the protected class." *Vitt,* at 639, citing *Sutherland v. Mich. Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir.2003).  The burden of establishing a prima facie case under *McDonnell Douglas* is not onerous.  *Burdine,* at 251.

Though the Sixth Circuit has not established a bright line test for what constitutes "background circumstances sufficient to support the first prong in a reverse discrimination claim, this Court looks to prior decisions for guidance.  In *Kimble v. Intermetro Industries,* 288 F. Supp.2d 876, 880 (N.D. Ohio 2003), the Court found Plaintiff had failed to demonstrate sufficient background evidence that the employer was the unusual employer who discriminates against the majority.  In *Kimble*, Plaintiff was a male employee alleging reverse sex

7

discrimination. The evidence showed the employer hired more men than women, and there was no external or internal pressure to hire more women and the management team consisted of more men than women.[1]

Here, Plaintiff fails to satisfy her burden of producing evidence sufficient to establish the requisite background circumstances. She merely offers an assertion, unsupported by facts or testimony, that "the large majority of NEPRC's supervisory personnel are minorities." (Plaintiff's Brief in Opposition pg. 17.) That Captain Smith may have treated minority employees better than whites is not sufficient to satisfy the background circumstances prong. Plaintiff does not point to any evidence that there is a history of reverse discrimination at NEPRC, or that minorities make up the majority of supervisors at NEPRC. Plaintiff alleges the majority of her supervisors were minorities, naming four supervisors, Captain Smith, Lt. Cruz, Vizcarrando and Crook. (Plaintiffs Brief in Opposition, pg. 17). However, Plaintiff admits Lt. Cruz and Vizcarrando "had no difficulty with her". (Id. at 4). Plaintiff does not point to any evidence that minority supervisors made all the decisions, that there was any internal or external

---

[1] *Kimble* at 880, cites the following cases demonstrating what evidence other Courts considered sufficient to satisfy the background circumstances prong. "*Reynolds v. School Dist. No. 1,* 69 F.3d 1523 (10th Cir.1995) (the plaintiff was the only white employee in an otherwise all-Hispanic department and Hispanic supervisors made most employment decisions); *Bishopp v. District of Columbia,* 252 U.S.App. D.C. 156, 788 F.2d 781 (D.C.Cir.1986) (the defendant promoted less qualified minority employee; use of subjective rather than objective criteria; internal and external pressure to favor minorities); *Lanphear v. Prokop,* 227 U.S.App. D.C. 89, 703 F.2d 1311 (D.C.Cir.1983) (qualified white passed over for black whose qualifications were not fully checked; pressure to increase minority percentages). We cite ... [these Title VII] cases to illustrate the kind of evidence plaintiff might have brought forward, if it had been available, to satisfy the first element of his prima facie case. [*Allen v. Comprehensive Health Serv.,*] 222 Mich.App. 426, 434, n. 6, 564 N.W.2d 914 [ (1997). ] *See also, Murray v. Thistledown Racing,* 770 F.2d 63, 68  (6th Cir.1985)  (suggesting that reverse discrimination plaintiff might have satisfied the "background circumstances" prong of the test had he been able to show that the employment practices at issue were grounded in an affirmative action program.)
*Comiskey v. Automotive Indus. Action Group,* 40 F.Supp.2d 877, 892 (E.D.Mich.1999)."

pressures to hire more minorities or that any employment decisions were based on an affirmative action plan.  Finally, the ultimate decision maker, Warden Shewalter, is white.

Plaintiff has also failed to demonstrate the fourth prong of her race discrimination claim. Plaintiff has offered no evidence of a single similarly-situated minority probationary correction officer being treated more favorably.  Mere generalized statements that a supervisor favored minority employees is insufficient.  "To create an inference of disparate treatment, a plaintiff 'must prove that all of the relevant aspects of his employment situation are 'nearly identical to those of the [black] employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.'" *Boggs v. Commonwealth of Kentucky,* 101 F.3d 702 (table) 1996 WL 673492, (6th Cir. 1996), quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994).  Without the specific comparator of a named individual, Plaintiff has failed to satisfy the fourth prong of a reverse discrimination claim.  Plaintiff cites to testimony from Lt. Cruz (a non-caucasian) that Smith treated Goller differently than other corrections officers. However, Lt. Cruz does not compare the treatment to any particular officer and, in fact, did not remember any other probationary officer (Cruz, pg. 20).  Neither do Officer Gennaro, Ms. Heavrin or Ms.Chabody compare her treatment to a specific similarly-situated probationary officer.  Finally, Plaintiff's own witnesses testified that Captain Smith's favorite clique included Caucasian officers, while Lt. Cruz, a non-Caucasian, alleged Captain Smith treated her poorly. Plaintiff has failed to meet her burden of showing disparate treatment of similarly-situated minority probationary officers.

Therefore, the Court finds Plaintiff has failed to show any genuine issue of material fact

9

in support of her reverse race discrimination claim and the Court grants summary judgment for Defendants and against Plaintiff on Plaintiffs Title VII race discrimination claim.

## Title VII Retaliation

"To establish a prima facie case of Title VII retaliation, a plaintiff must show: (1) plaintiff engaged in activity protected by Title VII; (2) plaintiff's exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *EEOC v. Avery Dennision Corp.,* 104 F.3d 858, 860 (6th Cir. 1997). Plaintiff has the initial burden of making a prima facie case of retaliation. Once Plaintiff has met this burden the Defendant must articulate a non-discriminatory reason for the adverse employment action. Once Defendant has satisfied this requirement the burden shifts back to Plaintiff by a preponderance of the evidence standard, that the non-discriminatory reason cited

by Defendant was merely pretextual. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *Singfield v. Akron Metropolitan Housing Authority, et al.,* 389 F.3d 555 (6th Cir. 2004). In meeting his burden, Plaintiff does not need to prove his case by a preponderance of evidence at the prima facie stage. *Id.* at 563. "[T]he burden of establishing a prima facie retaliation case is easily met." *Id.*

"Although no one factor is dispositive in establishing a causal connection, evidence ... that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000).

This Court has already determined the comments by Captain Smith to Defendant do not

constitute direct evidence of discrimination.  Therefore, the Court must apply the *McDonnell/Burdine* burden shifting analysis to Plaintiff's wrongful retaliation claim.

There is no dispute that lodging a complaint of unlawful discrimination is a protected activity under Title VII.  Plaintiff's sworn testimony that she complained to Warden Shewalter of the racially discriminatory remarks of Captain Smith satisfies prong two of her retaliation claim.  Defendant does not dispute that it took an adverse employment action against Plaintiff.  Defendant does dispute that the adverse employment action was the result of Plaintiff's discrimination complaint.

Plaintiff is unable to state with specificity when she reported the alleged racially discriminatory treatment to Warden Shewalter.  She does testify she spoke to the Warden on three separate occasions about Captain Smith's conduct yet, she is unable to say when the meetings occurred, though Plaintiff's Ex. KK, dated 5/18/04, references a meeting with the Warden.  Warden Shewalter recalled only one oral report from Plaintiff, placing it approximately two months prior to her termination.  Shewalter did not recall any mention of racial discrimination.

The Court finds Plaintiff cannot establish a causal connection between her complaints and her termination.  Without sufficient evidence of when the complaints were made the Court cannot determine the temporal proximity to her termination to infer unlawful retaliation.  Coupled with the fact that Plaintiff was a probationary employee and had only been on the job for approximately nine months, any complaint she might have made about Captain Smith, would have temporal proximity to her termination.  Also, Plaintiff's negative reviews predated her assignment to Captain Smith.  The evidence demonstrates that Plaintiff was not under Captain

11

Smith's supervision until May of 2004.  In March of 2004, Lieutenant Farnan, a white female, conducted a review of Plaintiff, showing Plaintiff met only three of seven evaluated categories.  In her second review dated May of 2004, conducted by Lt. Crook, an African-American female, Plaintiff met only two of the seven evaluated categories.  Plaintiff's brief states "initially Ms. Goller was supervised by several lieutenants including Katrina Farnan, a white female and Lieutenant Crook, an African-American female, on the second shift.  Sometime in and around the beginning of May 2004, Ms. Goller came under the direct supervision of Captain Donna Smith..."  The Court has not been presented evidence that Captain Smith influenced these two reviews prior to Plaintiff coming under her direct supervision. Therefore, there does not appear any evidence that Defendants' attitude towards Plaintiff changed as a result of her complaining of the treatment at the hands of Captain Smith.  Plaintiff's poor reviews preceded both her supervision by Captain Smith and her complaints of alleged discriminatory behavior to Warden Shewalter.  Evidence that Plaintiff had poor work evaluations prior to the alleged protected activity has been held to defeat a prima facie showing of the causal connection between a plaintiff's protected activity and an adverse employment action.  See *Clark v. City of Dublin, Ohio,* 178 Fed. Appx. 522, 525 (6th Cir. 2006), ("[t]he District Court properly held that the Appellant has offered no evidence to demonstrate that the three reprimands in anyway relate to the retaliation, especially in light of the fact that the Appellant had been cited for such matters prior to the complaint.") The Court finds this evidence is more significant because Plaintiff was a probationary employee.

Finally, Warden Shewalter's testimony shows that he, as the ultimate decision maker, determined Plaintiff's actions in the incident of August 3, 2004, wherein Plaintiff left her post

without exchanging chits with her replacement, were worthy of termination on their own. Plaintiff contends the second shift replacement refused to take her chits. However, Warden Shewalter testified, "[a]nd this incident, it was my call that it was serious enough she had to go." (Shewalter, pg. 68). Earlier, Warden Shewalter testified, "[t]his incident is extremely serious in my mind, so something I won't tolerate." (Shewalter, pg. 56). Goller's contention that the relieving officer failed to take her chits would not have effected the Warden's decision to terminate her, as evidenced by Warden Shewalter's following testimony:

> Q. With respect to the incident, no, I don't and that's why I'm asking. You said it was serious enough and you kind of almost implied it was the proverbial straw that broke the camels back with respect to her continued employment.
>
> A. Regardless of what her reasoning is of not properly relieving that officer, I don't care if she likes it or not, she did turn her equipment in. If there was some issue between the two she did not make the supervisor aware of it. She put several staff's lives in jeopardy by leaving the most critical post in the institution unattended.
>
> Q. Even if the individual she was suppose to exchange the keys or chits with refused to take them from her?
>
> A. Absolutely. At that point she is not authorized to abandon her post, which she did. If there would have been an alarm or fire we would have had a more serious issue to discuss.

(Shewalter pg. 57).

Plaintiff cannot demonstrate that her poor evaluations were due to an improper retaliatory motive, as two of her poor bi-monthly evaluations predated her service under the supervision of Captain Smith. Also, Plaintiff can offer no evidence that Warden Shewalter's decision to

13

terminate her was causally connected to her complaints of discrimination and harassment.

Therefore, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's claim of unlawful retaliation under Title VII.

### HOSTILE WORK ENVIRONMENT

To establish prima facie claim of hostile work environment Plaintiff must demonstrate: "(1) that she is a member of a protected class; (2) that she was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability." *Vitt v. City of Cincinnati,* 97 Fed. Appx. 634, 638 (6th Cir. 2004).   "In determining whether there was a hostile or abusive work environment, we look to the totality of the circumstances." *Id*. citing  *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).  Courts must consider,  "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, (1993).

"Title VII is not 'a general civility code for the American workplace,' " *Burnett v. Tyco Corp.,* 203 F.3d 980, 982 (6th Cir.2000) and "[p]ersonal conflict does not equate with discriminatory animus." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 791 (6th Cir.2000).  "Furthermore,  'simple teasing', offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Vitt* at 638, quoting *Faragher,* 524 U.S. at 788.  "Whether conduct is severe or pervasive is quintessentially a question of fact." *Jordan v. City of Cleveland,* 464 F.3d 584, 597

(6th Cir. 2006).  An employer's liability for the racially harassing actions of a supervisor is vicarious liability.  *Hafford v. Seidner,* 183 F.3d 506, 513 (6th Cir. 1999).

Plaintiff, having abandoned her sex/gender discrimination claim alleges only hostile work environment based on race.  Plaintiff is not a member of a protected class.  Therefore, in order for Plaintiff to establish a prima facie case of hostile work environment based on reverse discrimination, she must meet the additional burdens under *Vitt.*  See *Berger v. White*, 293 F.Supp.2d 721, 725 (W.D. Ky. 2003). Since she brings her Title VII claims alleging reverse discrimination, her prima facie case is modified such that she must demonstrate Defendant is the unusual employer who discriminates against the majority and that Plaintiff was treated differently than similarly situated minority employees.  Having already determined Plaintiff failed to meet these additional prima facie requirements, the Court finds Plaintiff has failed to make a prima facie case of hostile work environment under Title VII and the Court grants summary judgment for Defendants.

Therefore, the Court grants summary judgment for Defendants and against Plaintiff on all Plaintiff's remaining claims.

IT IS SO ORDERED.

| April 12, 2007 | s/Christopher A. Boyko |
|---|---|
| Date | CHRISTOPHER A. BOYKO |
| | United States District Judge |